UNITED STATES of America,
Plaintiff–Appellee

v.

William Henry DAVENPORT, a/k/a
"Bill", Defendant–Appellant.

No. 90–5561.

United States Court of Appeals,
Eleventh Circuit.

July 17, 1991.

**1226**

Leonard J. Cooperman, Miami, Fla., for defendant-appellant.

Dawn Bowen, Linda Collins–Hertz, Jeffrey Sloman, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

ANDERSON, Circuit Judge:

Appellant William Davenport was indicted under three counts of a seven-count indictment targeted at an alleged scheme to import into the United States and distribute approximately 15,000 pounds of marijuana. After spending more than twenty-one months in pretrial detention, appellant was convicted under count one of conspiring to import marijuana into the United States in violation of 21 U.S.C.A. § 952(a) and under count two of unlawful distribution of marijuana in violation of 21 U.S.C.A. § 959 and 18 U.S.C.A. § 2.[1] Appellant was given two consecutive fifteen-year sentences, one for each count, and a special three-year parole term for the second count. Appellant is currently incarcerated.

On appeal, appellant alleges that the government violated his rights to a speedy trial under the Speedy Trial Act, 18 U.S.C.A. § 3161 et seq., and the Sixth Amendment of the United States Constitution. For the reasons set forth below, we hold that neither the Speedy Trial Act nor the Constitution were violated.

## I. STATEMENT OF FACTS

On June 15, 1988, appellant was indicted in the United States District Court for the Southern District of Florida under three counts of a seven-count indictment that involved nineteen other alleged coconspirators. Appellant was arrested on July 18, 1988, and was arraigned before a magistrate judge on July 20, 1988. On July 22, 1988, the district court ordered that appellant be held without bond until trial based on the following findings: that appellant was presently on either parole or probation from a prior drug offense in Georgia; that appellant was awaiting trial in a cocaine trafficking case in Palm Beach County, Florida; that appellant possessed a bag of marijuana, two kilograms of cocaine, and numerous firearms and other weapons at the time of his arrest; and that appellant had spent over half of his forty-eight years in prison for felony convictions. The district court made an express finding that appellant presented a serious risk of flight and/or a serious danger to the community.

On July 29, 1988, appellant filed a motion seeking an amendment of the conditions of his release in which he challenged the magistrate judge's bases for imposing pretrial detention. The district court denied this motion on September 20, 1988. Appellant appealed the denial of that motion to this court on September 29, 1988. This court affirmed the district court's ruling and adopted the magistrate's pretrial detention order.

On October 18, 1988, appellant filed a motion for release under 18 U.S.C.A. § 3164 and filed another motion for reconsideration of his detention status on November 4, 1988. On November 9, 1988, the district court denied both motions.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Appellant was found not guilty under count seven, which alleged unlawful importation of marijuana under 21 U.S.C.A. § 952(a) and 18 U.S.C.A. § 2.

Appellant filed a petition for writ of habeas corpus before this court on November 17, 1988, challenging the trial court's denial of his motion for release under § 3164. This court transferred the petition to the United States District Court for the Southern District of Florida on May 4, 1989. The district court denied the petition on April 23, 1990.

On September 15, 1989, appellant filed a motion to dismiss the indictment under the Speedy Trial Act. This motion was denied on September 22, 1989.

Appellant filed a motion for severance on September 18, 1989. The district court denied this motion on January 4, 1990. While the motion for severance was pending, appellant also moved for a review of his bond status on October 23, 1989. R2.658. The magistrate judge denied this motion on October 31, 1989.

On February 12, 1990, appellant filed a motion for a hearing to determine whether his continued pretrial detention deprived him of due process under the Fifth Amendment. On February 21, 1990, the magistrate judge ordered a hearing. It is disputed whether a "hearing" was actually held, but it is clear that the parties met on March 9, 1990, with the magistrate judge, who took the matter under advisement and gave the parties until March 14, 1990, to file additional materials regarding appellant's motion. On March 19, 1990, the magistrate judge ordered appellant to be either tried or released on bond by April 16, 1990.

Prior to the entry of the magistrate judge's order, appellant filed a second motion to dismiss the indictment and requested a hearing. Appellant asserted his right to a speedy trial under the Speedy Trial Act and, for the first time, the Sixth Amendment. The trial court denied this motion without a hearing on February 16, 1990.

The district court entered an order on April 6, 1990, setting appellant's trial for April 23, 1990. Appellant responded by moving for a bond hearing on the grounds that he would not be tried within the time ordered by the magistrate judge. Upon receiving the district court's order, the magistrate judge issued a new order changing the date on which appellant had to be tried or released on bond from April 16, 1990, to April 23, 1990.

In addition to the pretrial motions filed by appellant, numerous pretrial motions were also submitted by his codefendants. Relevant motions filed by codefendants will be discussed in our analysis of appellant's claims under the Speedy Trial Act.

Appellant's trial began on April 23, 1990, the date specified by the magistrate judge's second order. As discussed above, appellant was convicted under two of the three counts under which he was charged and sentenced to two consecutive fifteen-year prison terms with a special three-year parole term on the second count.

## II. THE SPEEDY TRIAL ACT

The Speedy Trial Act provides that the trial of any criminal defendant who pleads not guilty must begin within seventy days of the filing of the indictment or the date on which the defendant first appears before a judicial officer of the court in which the charges are pending, whichever occurs later. 18 U.S.C.A. § 3161(c)(1) (West Supp. 1989). If the defendant is not tried within the proper time limit, the indictment must be dismissed upon motion by the defendant. 18 U.S.C.A. § 3162(a)(2). The Speedy Trial Act excludes certain periods of time, however, from the calculation of the seventy-day limit. 18 U.S.C.A. § 3161(h). The exclusions which are relevant to the instant case provide as follows:

> (h) The following periods of delay shall be excluded ... in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> (E) delay resulting from any interlocutory appeal;
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hear-

ing on, or other prompt disposition of such motion;

(J) delay reasonably attributed to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court ...

(7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

(8)(A) Any period of delay resulting from a continuance granted by any judge ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C.A. § 3161(h)(1)(E), (1)(F), (1)(J), (7) & (8)(A).

The United States Supreme Court has established that the periods of delay listed in §§ 3161(h)(1)–(6) are automatically excluded from computation of the speedy trial time limit, regardless of their length. *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 1875, 90 L.Ed.2d 299 (1986). In *Henderson*, the Supreme Court rejected the argument that delay due to a pretrial motion was not excludable under § 3161(h)(1)(F) if the length of the delay was unreasonable. *Id.* 106 S.Ct. at 1875–77. The Court reasoned that because §§ 3161(h)(1)–(6) expressly exclude "any period of delay" and § 3161(h)(7) is expressly limited to a "reasonable period of delay," Congress did not intend to subject the delays listed in §§ 3161(h)(1)–(6) to a reasonableness requirement. *Id.* at 1875. The court cited § 3161(h)(1)(E), which excludes any delay due to interlocutory appeals and is also at issue in this case, as an example of a provision not subject to a reasonableness standard. *Id.* Thus, any delay due to an interlocutory appeal is excluded from appellant's speedy trial clock.

In *Henderson*, the Supreme Court also defined the contours of § 3161(h)(1)(F), which excludes delays due to pretrial motions, and its interaction with

§ 3161(h)(1)(J), which limits to thirty days the exclusion for proceedings under advisement before the court. The Court held that § 3161(h)(1)(F) and § 3161(h)(1)(J) apply differently to pretrial motions that require hearings and those that do not. *Id.* at 1876.

For pretrial motions that do not require hearings, § 3161(H)(1)(F) excludes the time required for "prompt disposition" of the motion. The length of the exclusion depends upon when the court takes the motion "under advisement" for purposes of § 3161(h)(1)(J). If the court has all the information necessary to rule on the motion at the time the motion is filed, the court immediately has the motion under advisement under § 3161(h)(1)(J) and thirty days may be excluded from the speedy trial clock due to the motion. The court may establish a period of time after the motion is filed, however, within which parties may submit materials relating to the motion. The motion is not under advisement by the court during this period of time, which is automatically excluded from the speedy trial clock and is not subject to a reasonableness requirement. Once the period for filing additional materials expires, the court takes the motion under advisement for purposes of § 3161(h)(1)(J) and no more than thirty additional days may be excluded from the speedy trial clock. *Id.*

For motions that require hearings, § 3161(h)(1)(F) excludes all time between the filing of the motion and the conclusion of the hearing at which it is addressed. *Id.* at 1877. This entire period is excluded from the speedy trial clock and is not subject to review regarding its reasonableness. *Id.* Once the hearing is concluded, the motion is treated exactly like a motion for which no hearing is required. If the court has all materials necessary to rule on the motion, the court is deemed to have taken the motion under advisement immediately following the hearing and § 3161(h)(1)(J) permits no more than thirty additional days to be excluded. As is true for hearings that do not require motions, however, the court may provide a period of time following the hearing during which

parties may submit supplemental materials regarding the motion. *Id.* This period of time is automatically excluded without regard to its reasonableness. *Id.* Once the court concludes the hearing and the time for filing supplemental materials expires, the court has taken the motion under advisement and § 3161(h)(1)(J) permits no more than thirty additional days to be excluded from the speedy trial clock. *Id.* at 1877.

The next provision relevant to this case is § 3161(h)(7), which freezes a defendant's speedy trial clock for reasonable periods of delay when codefendants cause delays that are excludable under § 3161(h). Section 3161(h)(7) provides that a defendant's speedy trial clock stops for reasonable periods of excludable delay caused by any co-defendant "as to whom the time for trial has not run and no motion for severance has been granted."

■ The final provision that applies to this case is § 3161(h)(8), which excludes all delay due to the grant of a continuance. The duration of the continuance is excluded only if the court expressly finds that "the ends of justice served by [granting the continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C.A. § 3161(h)(8)(A). In order for the continuance to be excluded, the court must also set forth its reasons for concluding that the factors justifying the continuance outweigh the defendant's right to a speedy trial. *Id.* The statute further provides a partial list of factors to be considered by the court in making that determination, which includes whether denying the continuance could result in a miscarriage of justice; would prevent adequate preparation for trial given the complex nature of the case due to the number of defendants [and other factors] ...; would "deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant ... the reasonable time necessary for adequate preparation." 18 U.S.C.A. § 3161(h)(8)(B). If the order granting the continuance fulfills the criteria set forth above, the duration of the continuance, from the date of the order granting the continuance until the date on which the order terminates the continuance, is excluded from the speedy trial clock. *Id.*

### III. DISCUSSION

#### A. *The Speedy Trial Act Claims*

##### 1. *Starting the Speedy Trial Clock*

■ Computation of the seventy-day limit under the Speedy Trial Act generally begins when the defendant is indicted or when the defendant first appears before the court, whichever occurs earlier. 18 U.S.C.A. § 3161(c)(1). Appellant first appeared before the court on July 15, 1988. The government correctly contends, however, that the speedy trial clock did not begin to run until August 31, 1988, because all of appellant's codefendants had not been apprehended. *See* Brief for the United States, *United States v. Davenport*, No. 90–5561 (filed Oct. 4, 1990) at 12 [hereinafter Government's brief]. At the time of appellant's initial appearance before the court, three of his codefendants were not yet in custody. From appellant's indictment until August 30, 1988, the court delayed appellant's trial to permit apprehension of the final three codefendants. On August 30, 1988, the missing codefendants had not been arrested, so the court transferred them to fugitive status.

Section 3161(h)(1), (7) attributes to appellant any reasonable delay caused by his codefendants. Section 3161(h)(3)(A) excludes from computation of the seventy-day limit "any period of delay resulting from the absence or unavailability of the defendant," defined to include defendants whose "whereabouts are unknown" and who are attempting "to avoid apprehension or prosecution." 18 U.S.C.A. §§ 3161(h)(3)(A) & (h)(3)(B). Although the unapprehended codefendants in the instant case had been indicted, their speedy trial clock clearly could not begin until they were apprehended and appeared before the court. *See* 18 U.S.C.A. §§ 3161(c)(1) & (h)(3)(A). Because appellant was properly joined with the unavailable codefendants during the relevant time period and no

motion to sever had been granted, the delay occasioned by those codefendants under 3161(h)(3)(A) is charged to appellant under § 3161(h)(7). *See United States v. Tobin,* 840 F.2d 867, 869 (11th Cir.1988).

The transfer of the missing codefendants to fugitive status effectively severed them from the case on August 30, 1988. From that date forward, delay attributable to their fugitive status is no longer charged to the apprehended codefendants, including appellant. Because the day of the triggering event is not counted, we begin our computation of appellant's seventy-day trial clock with August 31, 1988, as day one.

### 2. *August 31, 1988 to September 7, 1988*

No event occurred during these dates that produced an excludable delay of appellant's trial. Therefore, eight days are counted against the speedy trial clock.

### 3. *September 8, 1988 to September 16, 1988*

▮▮▮▮ On September 8, 1988, codefendant Pinder filed a Motion for Reinstatement of Bond. The district court denied this motion in an order dated September 16, 1988. As the government correctly points out, the delay attributable to codefendant Pinder also stops appellant's speedy trial clock. 18 U.S.C.A. § 3161(h)(7). Thus, the time between the filing of codefendant Pinder's motion and the court's "prompt disposition" is excluded from appellant's speedy trial clock. 18 U.S.C.A. § 3161(h)(7). Therefore, appellant's speedy trial clock resumes its count on September 17, 1988.

### 4. *September 17, 1988 to September 28, 1988*

No event occurred during these dates that produced an excludable delay of appel-

lant's trial. Therefore, twelve days are counted against the speedy trial clock. Thus, twenty days accrued as of September 28, 1988.

### 5. *September 29, 1988 to October 18, 1988*

▮▮▮▮ This period of time includes two overlapping excludable delays that froze appellant's speedy trial clock. On September 29, 1988, appellant filed notice of his intent to appeal the district court's pretrial detention order. The government correctly argues that appellant's appeal of his detention status was an interlocutory appeal, which tolls appellant's speedy trial clock under 18 U.S.C.A. § 3161(h)(1)(E). The period of time excluded from the speedy trial clock for interlocutory appeals generally begins when the appeal is filed. *United States v. Long,* 900 F.2d 1270, 1276–77 (8th Cir.1990). Appellant filed notice in the district court of the instant interlocutory appeal on September 29, 1988. The period of excludable time begins on that date. It is unclear with respect to interlocutory appeals, however, whether the period of exclusion ends on the date the appellate court issues its order or extends until the date the district court receives that order.[2] We need not address this issue because it will not affect the result in this case. This court affirmed the district court's denial of appellant's request for an amendment of the conditions of his pretrial detention on October 12, 1988. Because the resolution of this case is not affected by which date is used, we terminate the exclusion on the date more favorable to appellant, October 12, 1988, the date this court issued its order. Therefore, no additional days are

---

**2.** *Compare United States v. Long,* 900 F.2d 1270, 1276 (8th Cir.1990) (excluding from speedy trial clock all time from district court's grant of stay to obtain permission to file an interlocutory appeal through the date "the [appellate court's] mandate was received by the district court") *and Tyler,* 878 F.2d at 759 (excluding from speedy trial clock "the 140 days that elapsed between the filing of the mandamus petition and the notification to the district court of the disposition of that petition") *and* Speedy Trial

Guidelines, *infra* pp. 1231–1232 (providing that delays due to extraordinary writs are excluded until the "[d]ate the mandate of the court of appeals is filed in the district court") *with United States v. Felton,* 811 F.2d 190, 198 (3d Cir. 1987) (holding that the excludable period for an interlocutory appeal ends upon "the date of issuance" of the appellate court's mandate and expressly rejecting extending the exclusion until the date the district court receives the mandate).

added to appellant's speedy trial clock from September 29, 1988 to October 12, 1988.

 Appellant's speedy trial clock did not resume on October 13, 1988, however, because while his interlocutory appeal was pending, codefendant Poole filed a motion for continuance of the trial date. Poole's pretrial motion tolled his speedy trial clock as well as those of his codefendants, including appellant. 18 U.S.C.A. §§ 3161(h)(1)(F) & (h)(7). Thus, appellant's speedy trial clock was frozen until the resolution of Poole's motion. *Id.* The district court granted Poole's motion for a continuance on October 18, 1988 and reset the trial date.

Due to the overlap of appellant's interlocutory appeal and codefendant Poole's motion for a continuance, appellant's speedy trial clock did not include any of the days from September 29, 1988, when he filed notice of his interlocutory appeal, through October 18, 1988, when codefendant Poole's motion for a continuance was granted.[3] Therefore, the total numbers of days under the speedy trial clock remained at twenty as of October 18, 1988.

6. *October 19, 1988 to November 14, 1988*

 The government argues correctly that appellant's speedy trial clock did not resume on October 19, 1988, however, because appellant filed a motion for release from pretrial detention on October 18, 1988, the day the district court granted codefendant Poole's motion for continuance. The district court denied appellant's motion for release on November 9, 1988. Appellant's speedy trial clock could not restart, however, because on that same day, November 9, 1988, codefendant Gibson filed a motion for Permission to Leave the Southern District of Florida. 18 U.S.C.A. §§ 3161(h)(1)(F) & (h)(7). The court did not grant Gibson's motion to travel until November 14, 1988. Therefore, appellant's speedy trial computation does not include the period from October 18, 1988, when appellant's motion for release was filed,

through November 14, 1988, when codefendant Gibson's motion to travel was granted. As a result, the speedy trial computation could not resume until November 15, 1988. As of November 14, 1988, the speedy trial clock remained at twenty days.

7. *November 15, 1988 to November 16, 1988*

No event occurred during these dates that produced an excludable delay of appellant's trial. Therefore, two days are counted against the speedy trial clock. Thus, twenty-two days accrued as of November 16, 1988.

8. *November 17, 1988 to May 4, 1989*

 On November 17, 1988, appellant filed a petition for writ of habeas corpus in this court, alleging that the length of his pretrial detention violated the Speedy Trial Act. This court transferred the petition to the district court on May 4, 1989. On April 23, 1990, the district court denied appellant's petition.

The government argues that a petition for writ of habeas corpus is analogous to an interlocutory appeal under § 3161(h)(1)(E) of the Speedy Trial Act. Government's brief at 19–20. The government asserts that the writ of habeas corpus is an extraordinary writ, Government's Brief at 20 (citing *Chaffee v. Johnson*, 229 F.Supp. 445, 446 (S.D.Miss.1964), *aff'd*, 352 F.2d 514 (5th Cir.1965), *cert. denied*, 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966)), and that "[e]xtraordinary writs are the functional equivalent of interlocutory appeals for purposes of ... § 3161(h)(1)(E)" of the Speedy Trial Act. *Id.* (citing *United States v. Tyler*, 878 F.2d 753, 757–59 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 254, 107 L.Ed.2d 203 (1989)). The government concludes that appellant's petition for writ of habeas corpus should be treated like an interlocutory appeal for purposes of the speedy trial clock.

Appellant presents four responses to the government's argument. First, appellant

---

**3.** We do not comment on whether the time during the continuance was also excluded from the speedy trial clock, because that same period of time is excludable for other reasons.

asserts that the petition for writ of habeas corpus did not justify tolling his speedy trial clock because the petition did not "in any way affect the trial court's ability to go to trial" and "*in fact* did not affect the trial scheduling." Reply brief at 9 (emphasis in original). Second, appellant contends that even if the petition created an excludable delay under the Speedy Trial Act, which would exclude all time between the filing of the petition and hearing at which it was resolved, no hearing was ever held on the merits of the habeas petition, despite appellant's repeated requests for a hearing to review his pretrial detention. Reply brief at 11. Third, appellant apparently asserts, although this argument is not clear in the brief, that because he never received a hearing, the court was bound to dispose of the habeas petition within thirty days under § 3161(h)(1)(J). Finally, appellant argues that the district court was bound by its local rules to resolve the petition "within a reasonable time," and failed to do so. Reply brief at 12.

Whether a petition for writ of habeas corpus tolls the speedy trial act is a question of first impression in this court and in other circuits. Therefore, we must look to analogous cases for guidance.

The case closest to this issue is *United States v. Tyler*, 878 F.2d 753 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 254, 107 L.Ed.2d 203 (1989), in which the Third Circuit held that the time between the filing and resolution of a petition for writ of mandamus was excluded from the computation of Tyler's seventy-day speedy trial clock. *Id.* at 757. In *Tyler*, the government filed a pretrial writ of mandamus in the Third Circuit in an attempt to prevent the district court from conducting a blank line-up.[4] The Third Circuit ultimately denied the writ as moot, because the blank line-up occurred while the writ was pending. *Id.*

On the day of trial, Tyler moved for dismissal of the indictment on the ground that his case had not been tried within the time specified under the Speedy Trial Act. *Id.* at 756. The district court denied the motion, holding that all of the time between the day the government filed the petition for writ of mandamus, July 7, 1987, and the day the district court received the Third Circuit's ruling, November 23, 1987, was properly excludable from Tyler's speedy trial clock. *Id.* Tyler was ultimately convicted. *Id.* at 756-57.

On appeal, Tyler argued that the district court had erred in excluding the delay attributable to the government's writ of mandamus from his speedy trial clock. In determining that such time was properly excluded, the Third Circuit was influenced by the "Guidelines under the Speedy Trial Act," promulgated by the Judicial Council Speedy Trial Act Coordinating Committee for the Second Circuit, which provide as follows:

> [Section 3161(h)(1)(E) ] applies to appeals taken by the United States under 18 U.S.C. Section 3731, to similar appeals under 18 U.S.C. Section 2518(10)(b), and to appeals taken under 28 U.S.C. Section 1291 and 18 U.S.C. Section 3147(b). *It also applies to applications for extraordinary writs (which can also be excluded under 3161(h)(1), and/or under 3161(h)(8) ).*

*Tyler*, 878 F.2d at 757 (emphasis in original) (citing Guidelines under the Speedy Trial Act, Judicial Council Speedy Trial Act Coordinating Committee, United States Court of Appeals for the Second Circuit, at 19 (January 8, 1979), *reprinted in* 125 Cong.Rec. 15,457, 15,459 (1979) [hereinafter Speedy Trial Guidelines] ). The court noted that this interpretation of the Speedy Trial Act had been cited with approval during Congressional hearings regarding the 1979 amendments to the Act. *Id.* at 758 (citing Hearings before the Senate Judiciary Com-

---

**4.** Tyler was charged with robbing a branch office of the United States postal service. *Tyler,* 878 F.2d at 754-55. Prior to trial, the government moved for an order requiring Tyler to appear in a line-up. *Id.* at 755. Tyler responded by moving for a "blank line-up"—a line-up in which the defendant does not appear—to precede the regular line-up. *Id.* The district court granted Tyler's motion and the government filed the writ of mandamus in an attempt to prevent the blank line-up. *Id.*

mittee on the Speedy Trial Act Amendments, 96th Cong., 1st Sess. 81, 91, 131, 705 (May 9, 1979)).

The *Tyler* court also noted that the Criminal Law Committee of the Administrative Office of the United States Courts expressly adopted the Second Circuit's broad interpretation of § 3161(h)(1), apparently in recognition of Congress' support:

> [Section 3161(h)(1)(E)] applies to appeals taken under the second clause of 18 U.S.C. § 3731 from decisions or orders suppressing or excluding evidence or requiring the return of seized property, and to similar appeals under 18 U.S.C. § 2518(10)(b). *Although an application for an extraordinary writ is not, strictly speaking, an "interlocutory appeal," it is an analogous "other proceeding" excludable under paragraph (h)(1).*

*Tyler*, 878 F.2d at 758 (citing Guidelines to the Administration of the Speedy Trial Act of 1974, November 10, 1984) (emphasis added)). Finally, the court noted that the purpose of the government's writ of mandamus was to seek "appellate review of a district court's order concerning a pretrial ruling rendered prior to final judgment." *Id.* at 758. Therefore, the court reasoned that the writ was "the functional equivalent of an interlocutory appeal" and could not identify any principled way to distinguish the type of appellate review sought in the writ from "*any* interlocutory appeal" expressly encompassed in § 3161(h)(1)(E). *Id.* (emphasis in original). From the above analysis, the court held that "the same reasons that support excluding delay resulting from 'any interlocutory appeal' also militate in favor of excluding delay resulting from the ... writ of mandamus in this case." *Id.*

We accept the rationale of the Third Circuit in *Tyler.* The Speedy Trial Act provides for the exclusion of delay resulting from "other proceedings concerning the defendant, including but not limited to— ... (E) delay resulting from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(E). We hold that the petition for writ of habeas corpus in this case seeking dismissal of the indictment for violation of the Speedy Trial Act is an "other proceeding" analogous to an interlocutory appeal. We hold that the delay resulting therefrom is excluded from the petitioner's speedy trial clock under 18 U.S.C.A. § 3161(h)(1)(E). Like the writ of mandamus in *Tyler,* appellant's habeas petition in this case sought "appellate review of a district court's final order concerning a pretrial ruling rendered prior to final judgment." *Tyler,* 878 F.2d at 758. Appellant wanted this court to determine whether his trial should proceed or his indictment should be dismissed.

▮▮▮▮▮▮ Appellant's responses to the government's argument do not change our analysis. First, appellant asserts that the petition for writ of habeas corpus did not justify tolling his speedy trial clock because the petition did not "in any way affect the trial court's ability to go to trial" and *"in fact* did not affect the trial scheduling." Reply brief at 9 (emphasis in original). In *United States v. Stafford,* 697 F.2d 1368 (11th Cir.1983), this court expressly rejected the argument that delays under § 3161(h) should not be excluded under the Act if they do not cause any actual delay of trial. In *Stafford,* this court held that each period of excludable delay listed in § 3161(h) is automatically excluded from the speedy trial clock, regardless of whether the excludable event caused any actual delay of trial.[5] Although *Stafford* involved

---

5. *Stafford,* 697 F.2d at 1371. This court reached that result for a number of reasons. First, the plain language of § 3161(h), which states that "the following periods of delay *shall* be excluded," indicates that each period of delay listed in that provision constitutes an automatic exclusion. *See id.* (citing 18 U.S.C. § 3161(h) (emphasis added)). The court reasoned that conditioning the exclusion upon a determination of actual delay would raise numerous and difficult factual issues as to whether various types of pretrial motions actually delayed the com-

mencement of a trial. *See id.* This court also noted that neither the legislative history of the Speedy Trial Act and its amendments nor any subsequent cases contemplate a determination of whether a pretrial motion actually delayed a trial. *Id.* (citing S.Rep. No. 96–212, 96th Cong., 1st Sess. 33 (1979) (stating that the Act provides for "automatic application of exclusions")). Finally, the court recounted other cases in which courts have addressed appellant's argument and rejected it. *Id.* (discussing *e.g., United States v.*

delay due to pretrial motions and the current issue involves interlocutory appeals, the holding in *Stafford* applies with equal force to all exclusions under § 3161(h). *See United States v. Saintil,* 705 F.2d 415, 417 (11th Cir.1983) (citing *Stafford,* 697 F.2d at 1371). Section 3161(h)(1)(E) provides that any delay is excluded which "result[s] from any interlocutory appeal." Thus, it is clear that the delay resulting from any interlocutory appeal, whether or not the appeal produces an actual delay of the commencement of trial, is automatically excluded from the calculation of the seventy-day limit under the Speedy Trial Act. *See id.* at 1372.

 Next, appellant contends that even if the petition created an excludable delay under the Speedy Trial Act that would exclude all time between the filing of the petition and the hearing at which it was resolved, no hearing was ever held on the merits of the habeas petition, despite appellant's repeated requests for a hearing to review his pretrial detention. Reply brief at 11. Appellant apparently asserts that because he never received a hearing, the court was bound to dispose of the habeas petition within thirty days under § 3161(h)(1)(J). Both of these arguments are rendered irrelevant by our ruling that appellant's petition for writ of habeas corpus is excluded under § 3161(h)(1)(E). Appellant's arguments relate to the measurement of a delay caused by a pretrial motion that requires a hearing under § 3161(h)(1)(F). The existence and timing of a hearing are not relevant to the excludability of an interlocutory appeal under § 3161(h)(1)(E). Delay due to an interlocutory appeal is not subject to a reasonableness requirement. *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 1875–77, 90 L.Ed.2d 299 (1986). Under *Henderson,* this court was clearly not required to dispose of the petition for writ of habeas corpus within thirty days. In addi-

tion, the extent of excludable delay for an interlocutory appeal is measured from the filing of the appeal to the appellate court's resolution of the appeal. *See* discussion *supra* at 1230–1231. The existence and timing of a hearing are not relevant to this measurement. Therefore, whether or not appellant received a hearing is irrelevant for purposes of determining the period of time excluded under § 3161(h)(1)(E) due to his petition for writ of habeas corpus.

Finally, appellant argues that his indictment should be dismissed because the district court was bound by its local rules to resolve the petition "within a reasonable time" and failed to do so. Reply brief at 12. Appellant bases this argument on the Supreme Court's finding in *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), that Congress intended for abuses of the automatic and unlimited exclusions under § 3161(h) to be prevented through "district or circuit [court] guidelines, rules, or procedures relating to motions practice." *Henderson,* 476 U.S. at 328–29, 106 S.Ct. at 1875–76 (citing H.R.Rep. No. 96–390, p. 10 (1979), U.S.Code Cong. & Admin.News, 1979, pp. 805, 814).

 Appellant's reading of *Henderson* is misplaced. Although the Supreme Court held that Congress intended for the federal courts to employ local rules to prevent abuse of potentially endless opportunities for delay under the Speedy Trial Act, *Henderson,* 476 U.S. at 328–29, 106 S.Ct. at 1875–76, Congress clearly did not incorporate the local rules of each circuit and district court into the Speedy Trial Act. *See* 18 U.S.C.A. §§ 3161 *et seq.* We find that violations of local rules do not trigger the remedies available under the Speedy Trial Act, and that the appropriate remedy must be determined by the court charged with the promulgation, interpretation and enforcement of those rules.[6]

---

*Brim,* 630 F.2d 1307, 1311–12 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981) (rejecting the argument that delays due to pretrial motions are not excluded unless "delay of the trial is actually caused by the filing of the motions")).

6. An additional problem with appellant's argument is that the allegedly violated rule in the district court required disposition of motions "within a reasonable time." The Supreme Court in *Henderson* expressly noted that such vague

■ Having determined that appellant's habeas petition should be treated like an interlocutory appeal, we must now determine exactly what period of time is excluded. As discussed earlier,[7] *any* period of delay due to an interlocutory appeal is automatically excluded from the speedy trial clock. *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 1875–77, 90 L.Ed.2d 299 (1986). Such a delay is excluded whether or not its extent is considered reasonable. *Id.* The period of time excluded from the speedy trial clock for interlocutory appeals generally begins when the appeal is filed. *United States v. Long*, 900 F.2d 1270, 1276–77 (8th Cir.1990). The petition for writ of habeas corpus was filed in this court on November 17, 1988. Therefore, the period of excludable time begins on that date. As was the case *supra*, we need not decide whether the period of exclusion ends on the date the appellate court issues its order or extends until the date the district court receives that order[8] because that issue will not affect the result in this case. Here, this court issued its mandate on May 4, 1989 and the district court received the mandate on May 9, 1989. We terminate the exclusion on the date more favorable to appellant, May 4, 1989, the date this court issued its mandate. Thus, only those days from November 17, 1988, the date the petition was filed in this court, through May 4, 1989, the date this court issued its mandate, are excluded from appellant's speedy trial clock.[9] As a result, twenty-two days had accrued on the speedy trial clock as of May 4, 1989.

### 9. *May 5, 1989 through May 11, 1989*

We assume, but need not decide, that no event occurred from May 5 through May 11, 1989, that created excludable time. Therefore, the seven days of May 5 through May 11 are counted against the speedy trial clock, raising the total number of expired days to twenty-nine.

### 10. *May 12, 1989 through September 5, 1989*

■ On May 12, 1989, codefendant Hunt Edwards filed an unopposed motion for continuance so that his recently retained counsel could prepare adequately for his defense. The court granted this motion on May 15, 1989, and continued the trial until September 5, 1989. Davenport argues that the district court's consideration of the ends of justice factors was conclusory and that the district judge did not separately consider his interests. However, the court's order expressly noted that the motion for continuance was unopposed, and Davenport did not object. We decline to address Davenport's argument because it was not preserved for appeal. Moreover, we note that the stated ground for the continuance facially satisfied 18 U.S.C.A. §§ 3161(h)(8)(A) & (B)(iv) (expressly permitting exclusion of continuances based on defense counsel's need for "reasonable time necessary for adequate preparation").

We conclude that the days from May 12, 1989, the date codefendant Edwards filed the motion for continuance, through September 5, 1989, the end of the continuance, are excluded from appellant's speedy trial clock under § 3161(h)(7), and the total days accrued remains at twenty-nine as of September 5, 1989.

### 11. *September 6 and 7, 1989*

No excludable delay arose during these two days, so both dates count against the

---

standards would be difficult to employ in enforcing the Speedy Trial Act:

> The interpretation of the local rule … is a matter on which we should defer to the Court of Appeals for the Ninth Circuit. It found no violation of the Rule.
> *It would be useful in the future for circuit and district court rules to include specific timetables, thereby giving substance to the obligations of prosecutors and defense counsel under the Speedy Trial Act.*

*Henderson*, 476 U.S. at 329, 106 S.Ct. at 1876 n. 9. (emphasis added).

**7.** *See* discussion, *supra* at 1227–1228.

**8.** *See* footnote 2 *supra* and accompanying text.

**9.** We need not address the additional period of time, if any, that would be excluded under the Speedy Trial Act for the district court to rule on the petition in this case after it received the petition on remand from this court. We need not address this issue because the potentially relevant period of time is excluded for other, more settled reasons under the Act.

speedy trial clock, raising the total number of expired days to thirty-one.

### 12. *September 8, 1989 through April 9, 1990*

 On September 8, 1989, some of appellant's codefendants filed motions for a continuance. The district court granted these motions on October 3, 1989, resetting trial for April 9, 1990. In its order, the district court noted that two defendants required additional time to prepare for trial due, among other reasons, to the unavailability of defense counsel and the need for additional time to prepare an adequate defense. After reciting these grounds, the district court expressly found that "the ends of justice served by granting this continuance outweigh the best interests of the public and Defendants in a Speedy Trial." Because the court ruled on the defendants' motion within 30 days, § 3161(h)(1)(J) excludes all of the time between and including September 8 and October 3, 1989.

 We find, contrary to appellant's position, that the district court's order complies with the requirements of §§ 3161(h)(8)(A) & (B). As stated in the order, one of appellant's codefendants did not have counsel. Under that circumstance, the court had little choice but to grant newly appointed counsel adequate time to prepare an effective defense.[10] Therefore, the duration of the continuance was properly excluded from the speedy trial clocks of the movants. Appellant contends, however, that the delay occasioned by the continuance was not properly attributable to him under § 3161(h)(7). Appellant argues that although the continuance might have been necessary for his codefendants, the additional delay caused by the continuance was unreasonable with respect to him and therefore should not have been excluded from his speedy trial clock under § 3161(h)(7).

Section 3161(h)(7) permits reasonable delays caused by codefendants to be attrib-

uted to appellant. For a number of reasons, we find that the delay was not unreasonable, and therefore was properly attributed to appellant. The delay suffered by appellant must be balanced not only against the justification for the continuance itself but also against the strong judicial and legislative policy favoring joint trials. This court, in rejecting a proposed interpretation of § 3161(h)(7), has held that

> [t]he legislative history of the Act indicates that the purpose of the (h)(7) exclusion was to avoid requiring the government to seek severance in multi-defendant trials. As we noted in *United States v. Varella*, 692 F.2d [1352, 1359 (11th Cir.1982)], "Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time."

*United States v. Campbell*, 706 F.2d 1138, 1142 (11th Cir.1983). Indeed, this court has noted that Congress enacted § 3161(h)(7) in order to avoid multiple trials in cases such as "major narcotics conspiracies," precisely the type of case now before us. *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir.1982) (quoting Hearings on the 1972 Senate Subcommittee Bill, S. 754, 93rd Cong., 1st Sess. (1972) (Testimony of Deputy Attorney General Joseph T. Sneed)).

 In addition, whether the amount of delay attributed to appellant under § 3161(h)(7) was reasonable can be determined by reference to the totality of the circumstances prior to trial, by the extent to which the appellant's defense was prejudiced, or by the sheer length of the delay. *United States v. Darby*, 744 F.2d 1508, 1518–19 (11th Cir.1984). We hold that the delay attributed to appellant under § 3161(h)(7) was reasonable. The reason for this continuance, i.e., the need for a codefendant to obtain counsel, is precisely the type of delay that is reasonable in a

---

**10.** In addition, the Speedy Trial Act expressly permits district courts to exclude the period of delay due to a continuance when failure to grant the continuance "would deny counsel for the defendant … reasonable time necessary for effective preparation." 18 U.S.C.A. § 3161(h)(7).

case involving twenty codefendants. *See Darby*, 744 F.2d at 1519. In addition, we cannot conclude that the length of the continuance, five months, was not necessary to serve the purpose of the continuance. *Id.* Reasonableness is also measured by the extent to which the defendant's defense is prejudiced. *Id.* at 1519. We find very little prejudice in the instant case. There is no allegation or any evidence to support an allegation that the delay caused by the continuance prejudiced appellant's defense.[11] Finally, we cannot conclude that the sheer duration of the delay was unreasonable under § 3161(h)(7). Nearly half of the days during the continuance would have been excluded anyway under § 3161(h)(1)(F) due to motions filed by appellant.[12] As for the remainder, many days would have been excluded from appellant's

11. For a more detailed discussion of the evidence regarding prejudice, see discussion *infra* at 1239–1240.

12. The district court's decision to exclude the duration of the continuance from all defendants' speedy trial clocks encompassed the dates from October 3, 1989, the date of the district court's order, through April 9, 1990, the end of the continuance. It is this period of delay to which appellant objects. Of the one hundred eighty-nine days included in this delay, 85 are excludable due to motions by appellant and 104 are not. See calculations below.

For the limited purposes of this footnote, the term "excludable" refers to days that we hold are excluded due to the district court's continuance order on October 3, 1989, but that we conclude would have been excluded regardless of the continuance due to motions filed by appellant. Conversely, the term "unexcludable" refers to days that we hold are excluded due to the district court's continuance order of October 3, 1989 and that we conclude are not otherwise excludable due to motions filed by appellant.

12.1. *October 3, 1989 through October 17, 1989:* Appellant filed a motion to dismiss his indictment under the Speedy Trial Act on September 15, 1989, and a motion for severance on September 18, 1989. No hearing was held regarding either of these motions and neither motion received a ruling within thirty days. Therefore, the maximum amount of time excludable due to each motion is thirty days. 18 U.S.C.A. § 3161(h)(1)(J). Thus, the first motion excludes from September 15 through October 14, 1989, and the second motion excludes from September 18 through October 17, 1989. Together, these two motions exclude all dates from September 15 through October 17, 1989. As discussed above, however, the period of delay due to the disputed continuance did not begin until October 3, 1989, so that the excludable days that are relevant to this discussion begin on October 3, 1989, and end on October 17, 1989. Thus, a total of fifteen days are excludable due to motions filed by appellant.

12.2. *October 18, 1989 through October 22, 1989:* Appellant did not cause an excludable event to occur between October 18, 1989, and October 22, 1989, resulting in five unexcludable days.

12.3. *October 23, 1989 through October 31, 1989:* Appellant filed a motion for review of his bond status on October 23, 1989. The district court denied this motion on October 31, 1989. Because this motion was resolved within thirty days without a hearing, the days from October 23, 1989, through October 31, 1989 are excludable, resulting in nine additional excludable days and a total of twenty-four.

12.4. *November 1, 1989 through December 12, 1989:* Appellant did not cause an excludable delay from November 1 through December 12, 1989, adding forty-two unexcludable days. As of December 12, 1989, a total of forty-seven had elapsed which were not excludable due to appellant's actions.

12.5. *December 13, 1989 through January 4, 1990:* Appellant filed a motion on December 13, 1989 seeking a ruling on his motion for severance filed on September 18, 1989. The district court denied this motion on January 4, 1990, without a hearing and within thirty days, so that all dates between December 13, 1989, through January 4, 1990 are excludable. Thus, appellant's motion creates another twenty-three excludable days for a total of forty-seven.

12.6. *January 5, 1990 through January 23, 1990:* The nineteen days from January 5 through January 23, 1990 are not excludable due to motions by appellant, raising the total number of such days to sixty-six.

12.7. *January 24, 1990 through January 25, 1990:* Two days are excludable due to appellant's January 24, 1990, motion for a transcription of a collateral hearing, which was denied on January 25, 1990. The total number of excludable days rises to forty-nine.

12.8. *January 26, 1990 through February 11, 1990:* The seventeen days from January 26 through February 11, 1990, are not excludable due to motions by appellant, raising the total number of such days to eighty-three.

12.9. *February 12, 1990 through March 19, 1990:* Appellant filed a motion on February 12, 1990, for a hearing to determine whether his continued pretrial detention constituted a due process violation. On February 21, 1990, the district court granted the motion and a hearing was held on March 9, 1990. All of the time between the filing of the motion and the hearing is automatically excluded, creating twenty-six days of excludable time. Following the hearing, the court ordered counsel to submit all supplementary materials by March 14, 1990. This additional period of time is also automatically

speedy trial clock due to the extensive motion practice of appellant's codefendants prior to trial. The periods of excludable delay that this court has held are reasonable convinces us that the actual, additional delay caused by the continuance was not unreasonable under § 3161(h)(7). *See United States v. Tobin,* 840 F.2d 867, 869–70 (11th Cir.1988) (holding that eight months and ten days of delay was not an unreasonable period of delay to attribute to a codefendant under § 3161(h)(7)); *Darby,* 744 F.2d at 1519 (holding forty-two days of additional pretrial incarceration to be reasonable under § 3161(h)(7)); *United States v. Varella,* 692 F.2d 1352, 1358 (11th Cir. 1984) (holding a four month delay to be reasonable under § 3161(h)(7)); *United States v. Davis,* 679 F.2d 845, 850 (11th Cir.1982) (finding fifty-nine day delay to be reasonable under § 31612(h)(7)). For the foregoing reasons, we conclude that the duration of the continuance—from October 3, 1989, the date the continuance was granted, through April 9, 1990, the date on which the continuance ended—was properly attributed to appellant under § 3161(h)(7).

As a result, all days from September 8, 1989, the date the motion for continuance was filed by appellant's codefendants, through April 9, 1990, the end of the continuance, are excluded from appellant's speedy trial clock, leaving the total number of days expired at thirty-one.

13. *April 10, 1990*

This day was not excludable, so one additional day counts against the speedy trial clock, raising the total number of expired days to thirty-two.

14. *April 11, 1990 through April 20, 1990*

On April 11, 1990, appellant filed a motion for bond hearing. The magistrate judge ruled on appellant's motion on April 20, 1990. Because this motion was decided within thirty days without a hearing, the days from April 11, 1990, the date the motion was filed, through April 20, 1990, the date the motion was decided, are excluded from appellant's speedy trial clock. The total number of days expired under appellant's speedy trial clock remains at thirty-two.

15. *April 21, 1990 through April 23, 1990 (date of trial)*

On April 20, 1990, appellant filed a motion in limine in response to the government's notice of intent to rely on certain evidence at trial. This motion was granted just prior to trial on April 23, 1990. Because this motion was decided within thirty days without a hearing, none of the days from the filing of the motion on April 20, 1990, through the district court's ruling on April 23, 1990, count toward appellant's speedy trial clock. Thus, on the first day of appellant's trial, thirty-two days had elapsed under his speedy trial clock, a number well under the seventy days permitted by the Speedy Trial Act.

From the foregoing analysis, we conclude that appellant's rights under the Speedy Trial Act were not violated in this case.

B. *Constitutional Right to a Speedy Trial*

Appellant contends that he was denied the right to a speedy trial under the Sixth Amendment of the United States Constitution. Although compliance with the Speedy Trial Act does not bar Sixth Amendment speedy trial claims, " 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the [S]ixth [A]mendment right to a speedy trial

---

excluded, producing five more excludable days. Having heard argument and received all relevant materials from the parties, the court denied relief on March 19, 1990. Because the court ruled on the motion within thirty days of taking it under advisement, all of the time between March 14, 1990, and March 19, 1990, a total of six days, is excludable due to appellant's motion. As a result, thirty-six days are excluda-

ble due to the motion, so that the total the number of excludable days is eighty-five.

12.10. *March 20, 1990 through April 9, 1990:* Appellant produced no additional delays from March 20 through April 9, 1990, the end of the continuance. Therefore, twenty-one additional days are not excludable due to actions by appellant. The total of unexcludable days ends at one hundred four.

has been violated.'" *United States v. Saintil*, 705 F.2d 415, 418 (11th Cir.1983) (quoting *United States v. Nance*, 666 F.2d 353, 361 (11th Cir.1981)).

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth four factors that should be considered in determining whether a defendant received a speedy trial under the Sixth Amendment: (1) the length of the delay; (2) the reason for the delay; (3) whether and how the defendant asserted the right to a speedy trial; and (4) the amount of prejudice suffered by the defendant. Appellant argues, and the government seems to agree, that appellant's twenty-one months of pretrial detention warrants examination of the remaining factors and that appellant clearly asserted his right to a speedy trial on a number of occasions. Therefore, this discussion is limited to those factors which are contested: the reason for the delay and whether defendant suffered prejudice due to the delay.

In the instant case, the reason for the delay and whether appellant suffered prejudice are interrelated. In this circuit, a defendant generally must show actual prejudice unless the first three factors in *Barker* all weigh heavily against the government. *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir.), *reh'g denied*, 775 F.2d 304 (1985), *cert. denied*, 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986). While this formula is not mechanical and the factors set forth in *Barker* must be analyzed carefully on a case-by-case basis, this circuit has reasoned that the prejudice requirement should not be disregarded unless all of the remaining factors weigh heavily against the government. *Id.*

For purposes of the analysis below, we will assume *arguendo*, but need not decide, that factors one and three in *Barker*—the length of the delay and whether appellant asserted his right to a speedy trial—weigh heavily against the government. Under that assumption, appellant need only demonstrate that the second factor in *Barker*—the reasons for de-

lay—weighs heavily in his favor in order to assert under *Mitchell* that he does not have to show prejudice. In summary, appellant must either establish that the reasons for the delay weigh heavily in his favor, in which case he may not be required to show prejudice, or demonstrate prejudice to satisfy the fourth element of the *Barker* analysis.

1. *Reasons for the Delay*

Appellant asserts that the government is responsible for the delay of his trial, despite his concession that the government did not delay deliberately in order to hamper his defense. Appellant's Brief at 31. Appellant contends that the delay was caused by various problems relating to defense counsel for his codefendants, such as unavailability, inadequate time to prepare, and conflicts of interest. *Id.* Appellant urges that these causes of delay are analogous to neutral reasons for delay, such as negligent prosecution of a case and overcrowded court dockets, for which the Supreme Court has held the government responsible. *Id.* (citing *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192). Appellant emphasizes that he was not responsible for the delay in his trial and argues that he should not be denied his asserted right to a speedy trial because of delays attributable to the government.

Assuming *arguendo*, but not deciding, that the reasons for delay alleged by appellant are analogous to the neutral causes of delay discussed in *Barker*, the government in this case is responsible for the delay. Under *Barker*, however, such neutral reasons for delay "should be weighed less heavily against the government" than other factors, such as intentional prosecutorial delay.[13] Thus, *Barker* counsels that neutral reasons for delay should be attributed to the government but cautions that such delays are not as culpable as intentional delays.

In addition, the delays in this case were inherent to the government's good faith effort to conduct a complex, joint trial

---

**13.** In *Barker*, the Supreme Court indicated that different causes of delay should be given different levels of significance in the speedy trial

analysis. *Barker*, 407 U.S. at 530–31, 92 S.Ct. at 2191–93. The Court held that intentional delay by the prosecution should be weighed very

involving nineteen codefendants. The general rule in this circuit is that defendants who are jointly indicted should be tried together, and this rule applies with particular force in conspiracy cases. Fed.R. Crim.P. 8(b); *United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir.1988); *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir.1985); *United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir.1983). A joint trial is by far the most efficient method of presenting a complete picture of a complex conspiracy to the trier of fact.[14] The delay in this case must be balanced against the importance of conducting joint trials in conspiracy cases, which offsets to some extent the government's level of culpability.

While the government arguably may be responsible under *Barker* for the delay in this case, we cannot find that that responsibility weighs heavily against the government. There is absolutely no evidence of bad faith by the government. The reasons for delay in this case were, at worst, neutral reasons. In addition, the government's actions were taken in pursuit of a valid and important judicial policy favoring joint trials. Given these facts, we conclude that even if the government is ultimately responsible for the delay under *Barker*, the reasons for delay do not weigh heavily against the government and do not excuse a showing of actual prejudice. *See Mitchell*, 769 F.2d at 1547 (holding that a defendant was properly required to demonstrate prejudice where "only two of the first three *Barker* factors weighed heavily against the government").

### 2. *Prejudice*

Appellant concedes that he cannot show any prejudice due to the delay. Appellant's Reply Brief at 18 n. 19. Moreover, our review of the record discloses no evidence that appellant's presentation of his defense was impaired due to the delay and, indeed, appellant concedes that such proof cannot

be produced. *Id.* Therefore, in light of appellant's concession, we are unable to conclude that appellant suffered prejudice due to the delay in this case.

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

heavily against the government, but reasoned that neutral factors that contribute to delay, while ultimately the government's responsibility, should be weighed "less heavily against the government." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.

**14.** The fact that certain defendants are only charged under certain counts of the indictment or that "some of the defendants [are charged] with substantive counts arising out of the conspiracy" does not negate the validity or importance of conducting a joint trial. Fed.R.Crim.P. 8(b); *Simon*, 839 F.2d at 1472.